NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KINDRED HOSPITALS EAST, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>LOCAL 464A UNITED FOOD AND COMMERCIAL WORKERS UNION WELFARE SERVICE BENEFIT FUND, and THE MAXON COMPANY, INC.,<br><br>*Defendants*. | Civil Action No. 21-10659<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendants Local 464A United Food and Commercial Workers Union Welfare Service Benefit Fund's ("the Welfare Fund") and the Maxon Company, Inc.'s, ("Maxon" and collectively "Defendants") motion to dismiss, or, in the alternative, for judgment on the pleadings, D.E. 3, Plaintiff Kindred Hospitals East, LLC's, ("Kindred" or "Plaintiff") Complaint, D.E. 1-2 ("Compl."). Plaintiff has also moved to remand the matter to state court. D.E. 10. The Court has reviewed all submissions in support of and in opposition to the motions,[1] and decides the motions without oral argument, pursuant to Federal

---

[1] Compl.; Defendants' notice of removal, D.E. 1-1 ("Notice"); Defendants' answer, D.E. 2 ("Answ."); Defendants' submission in support of the Motion to Dismiss, D.E. 3; Plaintiff's brief in opposition to Defendants' Motion to Dismiss, D.E. 7; Plaintiff's motion to remand, D.E. 10; Defendants' reply to Plaintiff's opposition to the Motion to Dismiss, D.E. 11; Defendants' opposition to Plaintiff's motion to remand, D.E. 12; Plaintiff's reply to Defendants' opposition to Plaintiff's motion to remand, D.E. 13.

Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiff's motion to remand is denied.

I.     FACTS[2] AND PROCEDURAL HISTORY

The crux of this matter is Defendants' refusal to pay Plaintiff for medical services that Plaintiff provided to an unnamed beneficiary of the Welfare Fund, who is referred to in the submissions as "the Patient."  *Id.* ¶¶ 1-3.  Plaintiff is a Delaware limited liability company that operates in several states, including New Jersey, where it does business as "Kindred Hospital New Jersey-Rahway."  Compl. ¶ 5.  The Welfare Fund is a health plan that "provide[s] medical[] … benefits to beneficiaries … in New Jersey, New York, and Pennsylvania."  *Id.* ¶ 6.[3]  Maxon "is a New York corporation which provided third-party administration services for the [Welfare] Fund during the events at issue[.]"  *Id.* ¶ 7.

According to Plaintiff, Overlook Hospital referred the Patient to Kindred on January 15, 2018.  *Id.* ¶ 10.  The Patient had been in Overlook Hospital's intensive care unit since December

---

[2] The facts of this matter derive from Plaintiff's Complaint.  "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them."  *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299 (3d Cir. 2020) (alteration in original) (quoting *Ternan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)).  Likewise, review of Plaintiff's motion to remand requires the Court to "resolve all contested issues of substantive fact in favor of the plaintiff[.]"  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

[3] In their answer, Defendants represent that the Welfare Fund "is a self-insured, Taft-Hartley employee benefit plan pursuant to Section 305(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5)" as well as "an employee welfare benefit plan pursuant to Section 2(l) of ERISA, 29 U.S.C. § 1002(l), that is grandfathered under Section 1252 of the Patient Protection And Affordable Care Act, codified at 29 C[.]F[.]R[.] § 2590.715-1251[.]"  Answ. ¶ 6.

17, 2017, and Overlook Hospital referred the Patient to Kindred because "the Patient required acute hospital care for a longer period of time than Overlook was equipped to provide[.]" *Id.*

Before admitting the Patient, a Kindred employee named Sara contacted Maxon "to confirm that the Patient was eligible for coverage [under the terms the Welfare Fund's plan] and determine the terms of payment." *Id.* ¶ 11. Sara spoke with a person named Keri, *id.*, and "advised Keri that she was calling from a long-term acute care facility and needed to know whether the [Welfare] Fund would cover and pay for the Patient's care at Kindred." *Id.* ¶ 12. Sara also clarified "that Kindred provided inpatient acute care[,]" and was not "a skilled nursing facility." *Id.* ¶ 13. Keri then informed "Sara that the [Welfare] Fund covered the first 31 days of inpatient stays at 100 percent, and 80 percent thereafter." *Id.* ¶ 14. Keri added "that as long as Kindred was not a skilled nursing facility, the care was covered[,]" *id.* ¶ 15, and "that preauthorization was not required[,]" *id.* ¶ 16. As a result of Keri's statements "Kindred admitted the [P]atient and provided him with weeks of care and treatment until his discharge into an acute rehab facility on February 7, 2018." *Id.* ¶ 17.

Plaintiff alleges that it "submitted its claims to the [Welfare] Fund," but the Welfare Fund refused to pay because "Kindred was 'a non-covered facility.'" *Id.* ¶ 18. Defendants agree that the Welfare Fund did not pay "because the treatment was not covered under the written plan terms." Answ. ¶ 18.

On March 17, 2021, Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey alleging:(1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) promissory estoppel (only as to the Welfare Fund) as well as seeking a declaratory judgment as to the Welfare Fund. Compl. ¶¶ 19-48. Kindred seeks $171,485, among other things. *Id.* ¶¶ 28, 39, 43. That amount, Kindred contends, represents the value of the services that Kindred rendered to

the Patient. *See id.* ¶ 28. Plaintiff also seeks punitive damages on the first count. *Id.* ¶ 29. As to the declaratory judgment, Plaintiff seeks "a judicial declaration that the [Welfare] Fund must comply with [the Patient Protection and Affordable Care Act (PPACA)'s] mandates, that hospitalization is an essential benefit under PPACA, and that the [Welfare] Fund must thus pay Kindred for the care and treatment Kindred provided to the Patient." *Id.* ¶ 47.

On May 4, 2021, Defendants removed this matter to the District of New Jersey. The same day, Defendants filed an Answer, D.E. 2, and its current motion, D.E. 3. Plaintiff then moved to remand. D.E. 10. The Court addresses the motion to remand first.

## II.   LAW AND ANALYSIS

### A.  Motion to Remand

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The party removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). This burden is heavy, since removal statutes are "strictly construed and all doubts should be resolved in favor of remand." *Id*.

The federal removal statute provides in part as follows:

> Except as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Defendants invoke both diversity and federal question jurisdiction. *See* Notice ¶¶ 9-10.

4

Diversity jurisdiction is governed by 28 U.S.C. § 1332 and provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... [c]itizens of different States[] ...." 28 U.S.C. § 1332(a)(1)-(2).  However, 28 U.S.C. § 1441(b)(2) limits the ability of an in-state defendant to remove a case to federal court.  That subsection provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2); *see also Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).

Federal question jurisdiction is governed by 28 U.S.C. § 1331 and provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  In determining whether a complaint alleges a federal question, courts are generally guided by the well-pleaded complaint rule.  The rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A plaintiff is generally "entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim."  *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004).

In their notice of removal, Defendants submit that the first three counts of the Complaint are removable because the Court has diversity jurisdiction over those claims.  Notice ¶ 9 (citing §§ 1332 and 1441).  In a footnote, Defendants contend that "because removal is not based solely on diversity jurisdiction, the limitation on removal of actions in 28 U.S.C. § 1441(b)(2) does not apply."  *Id.* ¶ 9 n.1.  Defendants submit that the fourth count presents a federal question, as Plaintiff

5

seeks a declaration of "the Welfare Fund's duties under Section 1302 of the Patient Protection And Affordable Care Act, codified at 42 U.S.C. § 18022." *Id.* ¶ 10 (citing 28 U.S.C. §§ 1331, 1441)

Invoking Section 1441(b)(2), Plaintiff counters that the Welfare "Fund is a citizen of New Jersey – the state in which the action was brought. As such, removal on diversity jurisdiction is not permitted." D.E. 10-1 at 4-5. As to federal question jurisdiction, Plaintiff argues that "[r]emoval cannot be based simply on the fact that federal law may be referred to in some context in the case." *Id.* at 6. Plaintiff acknowledges that its fourth claim invokes the PPACA but maintains that "Congress has not created a private right of action under PPACA. As such, federal law does not create the cause of action." *Id.* at 7. Plaintiff concludes that "Defendants can only meet their heavy burden of establishing federal-question jurisdiction if they can show all factors under *Grable* [*& Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005)] are met[,]" *id.*, a showing that Plaintiff argues Defendants cannot make. *Id.*

Defendants respond that "[t]he declaratory judgment count of Plaintiff's complaint seeks affirmative relief under a federal statute, the [PPACA.]" D.E. 12 at 1. They criticize Plaintiff's *Grable* analysis as "superfluous because Plaintiff has pled a federal claim on the face of its Complaint." *Id.* Defendants maintain that the absence of a cause of action in the PPACA is properly addressed in a motion to dismiss rather than one for remand. *See id.* at 7-8. They further contend that Section 1441(b)(2)'s "forum defendant rule does not apply because the Court has federal question jurisdiction, so removal of the state-law claims was also proper." *Id.* at 2.

At the outset, the Court notes that Plaintiff does not contest the Court's diversity jurisdiction over the first three claims of the Complaint. *See Encompass Ins. Co.*, 902 F.3d at 152 ("[T]he forum defendant rule is procedural rather than jurisdictional, except where 'the case could not initially have been filed in federal court.'") (quoting *Korea Exch. Bank, N.Y. Branch v.*

6

*Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir. 1995)). And it appears that the parties are completely diverse, *see* Notice ¶¶ 6-8, Compl. ¶ 28. Rather, Plaintiff's basis for seeking remand of its first three claims is that the forum defendant rule prevents the removal of those claims.

Defendants rely on the plain language of Section 1441(b)(2) in support of their argument. The Court agrees. *See Travers v. Fed. Express Corp.*, 8 F.4th 198, 200 (3d Cir. 2021) (calling for plain language reading of statutes). Specifically, Section 1441(b)(2)'s forum defendant rule operates to bar the removal of an action if the action is "removable *solely* on the basis of the jurisdiction under section 1332(a)." 28 U.S.C. § 1441(b)(2) (emphasis added). By the statute's plain language, if an action is not removable *solely* because of diversity jurisdiction pursuant to Section 1332(a), then the forum-defendant rule does not apply.[4] Therefore, Defendants' removal is proper if there is another basis to remove this action. As noted, Defendants assert that the Court has federal question jurisdiction over Plaintiff's declaratory judgment claim.[5] The Court agrees.

Because this action is pending in a federal court, the federal Declaratory Judgment Act, rather than its state counterpart, applies. *Gasperini v. Ctr. for Humans.*, 518 U.S. 415, 427 (1996); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986). However, "[t]he operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S.

---

[4] The Court pauses briefly to observe that Section 1441 was amended in 2011 to add, among other things, the current version of the forum defendant rule in Section 1441(b)(2). Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, 125 Stat 758. To the extent that Plaintiff relies on cases decided before the effective date of the amendment that interpret an earlier version of the statute, Plaintiff's reliance is misplaced. *See, e.g.*, D.E. 13 at 9 (citing *Fields v. Organon USA Inc.*, No. 07-2922, 2007 WL 4365312 (D.N.J. Dec. 12, 2007)).

[5] Defendants do not argue that the Court has supplemental jurisdiction over the first three claims pursuant to 28 U.S.C. § 1367.

227, 240 (1937)).  The Act provides for a certain remedy and "is not a jurisdictional grant." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.4 (3d Cir. 2017); *see also Skelly Oil Co.*, 339 U.S. at 671; *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 201 (3d Cir. 2021).  Therefore, in considering a motion to remand an application for a declaratory judgment, courts look not to whether a complaint invokes the federal Declaratory Judgment Act, but the bases of federal jurisdiction invoked in the notice of removal or the underlying dispute.  *See id.*[6]; *see also California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting, *inter alia*, R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 841 (7th ed. 2015)).

The Court agrees with Defendants that the fourth claim in Plaintiff's Complaint presents a federal question under Section 1331.  The Complaint expressly states that "Kindred seeks a judicial declaration that the [Welfare] Fund must comply with PPACA's mandates, that hospitalization is an essential benefit under PPACA, and that the [Welfare] Fund must thus pay Kindred for the care and treatment Kindred provided to the Patient."  Compl. ¶ 47.  Resolving this claim would require the Court to interpret and apply the terms of a federal statute.  Whether or not the underlying claim is meritorious is not a consideration at this stage.  *Flanders v. Coleman*, 250 U.S. 223, 228 (1919) ("[J]urisdiction must be determined not upon the conclusion on the merits of the action, but upon

---

[6] A court may, in appropriate cases, decline jurisdiction to entertain a party's application for a declaratory judgment. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (quoting and citing 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co of Am.*, 316 U.S. 491, 494 (1942)). However, "when an action contains independent legal claims, 'federal courts have a virtually unflagging obligation to exercise jurisdiction.'" *Drago Servs. LLC v. Atain Specialty Ins. Cos.*, No. 21-6257, 2021 WL 3486939, at *2 (D.N.J. Aug. 9, 2021) (quoting *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017)). Here, Plaintiff's Complaint contains independent legal claims for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel, in addition to a claim for declaratory relief. Accordingly, this Court will not decline jurisdiction over the declaratory relief count of the Complaint.

consideration of the grounds upon which federal jurisdiction is invoked."); *Hartford Healthcare Corp. v. Anthem Health Plans, Inc.*, No. 3:17-CV-1686, 2017 WL 4955505, at *4 (D. Conn. Nov. 1, 2017) ("Leaving aside the merits of whether the ACA provides a private cause of action or not, the court notes that, even if the ACA provided no cause of action, the lack thereof would not create a jurisdictional problem.") (citing and discussing *Bell v. Hood*, 327 U.S. 678 (1946)).

Because the fourth claim of Plaintiff's Complaint is removable on the basis of federal question jurisdiction, the Court finds the forum defendant rule in Section 1441(b)(2) does not procedurally bar removal of this action. Section 1441(b)(2) is inapplicable because the matter is not "removable solely on the basis of the jurisdiction under section 1332(a)." 28 U.S.C. § 1441(b)(2).

For the foregoing reasons, the Court denies Plaintiff's motion to remand.

### B. Motion to Dismiss: Standard of review: Fed. R. Civ. P. 12(b)(6) & Fed. R. Civ. P. 12(c)

As noted, when Defendants removed this action, Defendants also filed an Answer, D.E. 2, and moved to dismiss the complaint pursuant to Rule 12(b)(6) or for judgment on the pleadings pursuant to Rule 12(c). D.E. 3. According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should dismiss a complaint when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6) the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to the complaint, the Court may also consider any exhibits attached thereto. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that when deciding a motion to dismiss, courts

9

generally consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). Under Rule 12(c), "[j]udgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008) (citing *Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140, 144-45 (3d Cir. 2001)); *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 397 (3d Cir. 2006). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).[7]

Defendants argue that Plaintiff's first three claims "are preempted by ERISA and should be dismissed with prejudice." D.E. 3-1 at 1. They further argue that Kindred's claim for declaratory relief "fails as a matter of law because it improperly seeks an advisory opinion

---

[7] The Court views a motion pursuant to Rule 12(c) as more appropriate than one pursuant to Rule 12(b)(6), but because the review standards are the same, it does not impact the Court's analysis. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) ("WAPA styled its motion as one for a 'Judgment on the Pleadings dismissing the Complaint' pursuant to both Rule 12(b) and Rule 12(c). A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading. A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Consequently, because WAPA filed its motion after it had already filed an answer, the motion must be considered a Rule 12(c) motion. Nevertheless, Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings. In this situation, we apply the same standards as under Rule 12(b)(6).").

10

unrelated to the parties' dispute." *Id.* at 14.  The Court first examines Defendants' arguments as to ERISA preemption.

### 1. ERISA

ERISA applies to "any employee benefit plan if it is established or maintained ... by any employer engaged in commerce." 29 U.S.C. § 1003(a).  "ERISA recognizes two types of employee benefit plans: 'employee pension benefit plans,' and 'employee welfare benefit plans.'" *Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3d Cir. 1992) (citing 29 U.S.C. § 1002(3)).  This matter concerns a welfare benefit plan, which is defined by ERISA as follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits[.]

29 U.S.C. § 1002(1).

Defendants argue that Plaintiff's first three "claims are preempted because they 'relate to' an ERISA-governed benefit plan." *Id.* at 7.  That is, according to Defendants, resolution of the fraudulent and negligent misrepresentation claims necessarily requires the Court to examine the terms of the plan to determine if they were, in fact, fraudulently or negligently misrepresented. *Id.* at 9-10.  Defendants stress that the promises upon which Plaintiff allegedly relied, and which give rise to the promissory estoppel claim, "were promises regarding *coverage*[.]" *Id.* at 11 (emphasis in original).

Under ERISA, the term "'preemption' is used … in more than one sense." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999).  The two forms of preemption found in ERISA

are "complete preemption" under Section 502(a) and "ordinary preemption" under Section 514(a). *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997). Defendants invoke Section 514's ordinary preemption. *See* D.E. 3-1 at 5 (discussing § 514(a)). The significant difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare*, 193 F.3d at 160.

In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied." *Joyce*, 126 F.3d at 171. As a result, ERISA's complete preemption provision, Section 502, is a misnomer, since it is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) … the district court is without subject matter jurisdiction." *Id.*; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required"). By comparison, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). In short, complete preemption

pursuant to Section 502(a) is a matter of federal subject matter jurisdiction while conflict preemption under Section 514 is not.

Section 514(a) provides that "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). "The purpose of this broad preemption clause [is] to ensure [that] plans and plan sponsors [are] subject to a uniform body of benefit law, minimizing the administrative and financial burden of complying with conflicting requirements of the various States." *Jorgensen v. Prudential Ins. Co. of Am.*, 852 F. Supp. 255, 260-61 (D.N.J. 1994) (citing *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 142 (1990)).

"State law" is statutorily defined as "all laws, decisions, rules, regulations, or State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). "State common law claims fall within this definition." *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-8697, 2018 WL 2441770, at *3 (D.N.J. May 31, 2018) (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012)). The phrase "relate to" is given its "broad common sense meaning, such that state law relates to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)) (internal quotations and alterations omitted). A claim relates to the plan "when proving this claim will require reference to plan documents to determine what each policy covers, and then examining [the defendant's] claims administration processing and procedures in light of the plan's contours." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295 (3d Cir. 2014). In other words, a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing

13

liability" and the "court's inquiry would be directed to the plan." *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992).

In the first three counts of the Complaint, Plaintiff does not seek recovery under the terms of the plan or Defendants' duty to comply with the plan's terms. *See, e.g.*, Compl. ¶¶ 28-29; *see also* D.E. 7-1 at 12. Indeed, nowhere in the Complaint does Plaintiff contend that the terms of the plan obligate Defendants to pay Plaintiff or that Plaintiff's attempts for payment were wrongfully rebuffed under the terms of the plan.[8] Rather, Plaintiff alleges that in the phone call between Sara and Keri, Defendants made certain representations as to the terms and scope of the plan such that Kindred could expect to be paid for the services it would render for the benefit of the Patient, a plan beneficiary. It was those representations, and their alleged effect under New Jersey law,[9] and not the plan or its actual terms, that form the legal basis for Plaintiff's first three claims.

New Jersey law also does not require an examination of the plan. For example, under New Jersey law, "[p]romissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). In *Goldfarb*, the New Jersey Supreme Court made clear that promissory estoppel "is a claim based

---

[8] In addition, for its first claim—fraudulent misrepresentation—Plaintiff also seeks punitive damages, which clearly would not be recoverable under the terms of the plan.

[9] The parties appear to agree that Plaintiff's first three claims would be governed by New Jersey law. *See* D.E. 3-1 at 9-1; D.E. 7-1 at 13. "To choose which state law will apply, 'a federal court sitting in diversity must apply the choice-of-law rules of the forum state.'" *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). But seeing no clear reason to deviate from the parties' implicit assumption that a choice-of-law analysis would result in the application of New Jersey law, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys "R" Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the . . . claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

14

on defendant's broken *promise*[.]" *Id.* at 572 (emphasis added). New Jersey law furthers the "goal of deterring persons from reneging on promises made with the expectation that there would be reliance when, in fact, there is reliance to the detriment of the promisee." *Id.* at 579. There is likewise a preexisting duty to refrain from making fraudulent misrepresentations of existing fact, *see, e.g.*, *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521 (N.J. 1981), and negligent misrepresentations, *see, e.g.*, *Pharmacy & Healthcare Commc'ns, L.L.C. v. Nat'l Cas. Co.*, No. A-0382-14T3, 2016 WL 10793944 (N.J. Super. Ct. App. Div. May 11, 2016).

The Third Circuit, as well as other courts, has consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim. *E.g.*, *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 237 (3d Cir. 2020) (holding that out-of-network provider's promissory estoppel claim "was not preempted because it arose out of an obligation independent from the plan."); *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (reversing district court's holding that plaintiff's promissory estoppel and negligent misrepresentation claims were preempted by ERISA "because these claims are premised on allegations and evidence that Access provided the services in reliance on United's representations that it would pay reasonable charges for Access's services."); *see also Jewish Lifeline Network, Inc. v. Oxford Health Plans, (NJ), Inc.*, No. 15-cv-0254, 2015 WL 2371635, at **3-4 (D.N.J. May 18, 2015) ("As broad as ERISA preemption may be, however, it does not foreclose a plaintiff from pleading a state law claim based on a legal duty that is independent from ERISA or an ERISA-governed plan. Significantly, preemption is mandated if a plaintiff is entitled to recover '*only* because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA' exists.") (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

The Court is not persuaded by Defendants' arguments that because their representations or promises regarded "coverage" and not payment that the claims based on those representations or promises are preempted by ERISA. The Court disagrees because "a claim that turns largely on legal duties generated outside the ERISA context[] and requires only a cursory examination of the plan is not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar." *Plastic Surgery Ctr.*, 967 F.3d at 233 (internal quotation marks and citation omitted).

Here, "Kindred does not challenge Defendants' representation that the plan provides no coverage for long-term acute care." D.E. 7-1 at 14. Indeed, a cursory review of the plan's exclusions, submitted in D.E. 3-3, makes that much clear. D.E. 3-3 at 15-16 ("The Plan does not cover the following: … long-term acute care[.]"). This is not the "exacting, tedious, or duplicative inquiry" that triggers ERISA preemption. *See Plastic Surgery Ctr.*, 967 F.3d at 233-34 (rejecting analogous argument where "it [was] not apparent from the pleadings why more than a cursory review of either J.L.'s or D.W.'s plan would be required[.]").

Accordingly, Defendants' motion to dismiss the first three claims of Plaintiff's Complaint is denied.

### 2. The Declaratory Judgment Act

Finally, the Court reviews Defendants' motion to dispose of Plaintiff's application for a declaratory judgment. Defendants argue that "[t]here is no controversy between the parties regarding whether 'hospitalization' is an essential health benefit under the Affordable Care Act." D.E. 3-1 at 15. Instead, according to Defendants, the only dispute is over "whether the Welfare Fund is exempt from the Affordable Care Act's essential health benefits requirement." *Id.* at 16. Defendants add that "[t]here is no private right of action under the Affordable Care Act to

challenge a group health plan's claim of grandfathered status." *Id.* at 17.  Instead, Defendants continue, a party should bring a claim "under Section 502(a)(1)(B) of ERISA to 'clarify his rights to future benefits under the terms of the plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)).  Plaintiff counters that "there is no question that the parties dispute whether the 'essential health benefit' provision of the PPACA has been violated by Defendants' actions.  Defendants' position that this provision does not apply does not mean that the controversy is hypothetical or abstract."  D.E. 7-1 at 22.

The Court disagrees that Plaintiff should have brought this claim pursuant to 29 U.S.C. § 1132(a)(1)(B)—that subsection allows only "a participant or beneficiary" to maintain such an action.  29 U.S.C. § 1132(a)(1).  Ordinarily, standing to maintain an action under Section 502 of ERSIA is limited to those persons or entities, or those who have derivative standing.  *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  No party has shown that Kindred is either a participant or a beneficiary or that it has derivative standing to invoke Section 502.  Accordingly, the Court does not fault Plaintiff for failing to bring an action pursuant to 29 U.S.C. § 1132(a)(1)(B).

Additionally, reading Plaintiff's Complaint closely, it appears that Plaintiff seeks a declaration of its rights under the PPACA, and not ERISA.  Plaintiff seeks "a judicial declaration that the [Welfare] Fund must comply with [the Patient Protection and Affordable Care Act (PPACA)'s] mandates, that hospitalization is an essential benefit under PPACA, and that the [Welfare] Fund must thus pay Kindred for the care and treatment Kindred provided to the Patient."  Compl. ¶ 47.

Having determined that it is the PPACA and not ERISA that is the applicable statute so far as Plaintiff's fourth claim is concerned, the Court proceeds to consider whether Plaintiff has

17

adequately stated a claim for declaratory relief under the PPACA. This inquiry requires the Court to determine whether Plaintiff has "a judicially remediable right[]" under the PPACA. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "To determine whether § 270[7] of the ACA creates a private right of action, the Court must look, first, to the plain language of the statute itself." *Ass'n of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs., Inc.*, No. 16-08400, 2017 WL 2560350, at *3 (D.N.J. June 13, 2017). If the plain language of the statute does not provide a right of action, "a court must next look to Congress's intent in enacting a statute to determine whether it would be appropriate to infer a right of action for the party seeking to enforce it." *Am. Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 296 (3d Cir. 2006). "The Supreme Court has explained that in discerning whether Congress intended to create a private right of action, courts should analyze whether the statute displays an intent to create: (1) a private right of action in a class of beneficiaries that includes the plaintiff; and (2) a private remedy." *Ass'n of N.J. Chiropractors*, 2017 WL 2560350, at *3.

Section 2707 appears to require that "[a] health insurance issuer that offers health insurance coverage in the individual or small group market shall ensure that such coverage includes the essential health benefits package required under section 18022(a) of this title." 42 U.S.C. § 300gg-6(a). Section 18022(a)(1), in turn, clarifies that "[i]n this title, the term 'essential health benefits package' means, with respect to any health plan, coverage that—provides for the essential health benefits defined by the Secretary under subsection (b)[.]" 42 U.S.C. § 18022(a)(1). Subsection (b) then provides that "[s]ubject to paragraph (2), the Secretary shall define the essential health benefits, except that such benefits shall include at least the following general categories and the

18


items and services covered within the categories[,]" § 18022(b)(1), and lists "Hospitalization" as such a category or item, § 18022(b)(1)(C).

While that much of the statutory language is clear, the question is whether the PPACA provides for a private right of action. On its face, Section 2707 of the PPACA does not. Nor does the statute appear to do so by implication. Although healthcare providers and patients could plausibly argue that they were Congress's intended beneficiaries when Sections 18022 and 2707 were drafted, nothing in the cited statutory language appears to indicate congressional intent to create a private remedy for those entities or persons. While Section 2707 specifies what an insurer *must do* to comply with the Act, it does not specify what a provider can or should do if it believes that a party subject to those provisions of the PPACA is not living up to its obligations.[10] Finally, Plaintiff does not point the Court to any portion of the legislative history evidencing a congressional intent to create a right of action, and does not cite any cases in which a party obtained a declaratory judgment to the effect that an ERISA plan violated Section 2707. Nor does Plaintiff cite to any legal authority which reaches a different conclusion. Moreover, as to similar provisions in the PPACA, the weight of authority is against such a private right of action. *See, e.g.*, *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2021 WL 3661326, at *8 (D.N.J. Aug. 18, 2021); *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-cv-10844, 2018 WL 3518511, at ** 4-5 (D. Mass. July 20, 2018); *Ass'n of N.J. Chiropractors*, 2017 WL 2560350, at *4; *Mills v. Bluecross Blueshield of Tenn., Inc.*, No. 15-552, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017).

For the foregoing reason, the fourth count of the Complaint is dismissed.

---

[10] As a result of this ruling, the Court does not reach Defendants' arguments that the Welfare Fund is not subject to the PPACA as a grandfathered Plan.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand is denied, and Defendants' motion is granted in part and denied in part. An appropriate Order accompanies this Opinion.

Dated: 9/29/21

_____
John Michael Vazquez, U.S.D.J.